# Exhibit A

2020 WL 4815906
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Gregory GODFREY, Jeffrey Sheldon, and
Debra Ann Kopinski, on behalf of themselves
and all others similarly situated, Plaintiffs,
v.
GREATBANC TRUST COMPANY, McBride
& Son Management Company, LLC, John
F. Eilermann, Jr., Michael D. Arri, and
McBride & Son Capital, Inc., Defendants.

Case No. 18 C 7918
|
Signed 08/19/2020

**Attorneys and Law Firms**

Gregory Y. Porter, Pro Hac Vice, Ryan Thomas Jenny, Bailey & Glasser LLP, Washington, DC, Patrick Owen Muench, Bailey & Glasser, LLP, Thomas Everett Clark, Jr., Pro Hac Vice, The Wagner Law Group, PC, Chicago, IL, Mark George Boyko, Bailey & Glasser LLP, Clayton, MO, for Plaintiffs.

Michael L. Scheier, Brian P. Muething, Jacob Deniro Rhode, Keating, Muething & Klekamp PLL, Cincinnati, OH, Ross David Taylor, Keating Muething & Klekamp PLL, Chicago, IL, for Defendant GreatBanc Trust Company.

Daniel J. Broderick, Jr., Brendan R. Youngblood, Cassiday Schade LLP, Chicago, IL, Lars C. Golumbic, Pro Hac Vice, Sarah M. Adams, Pro Hac Vice, Shaun Group Gates, Pro Hac Vice, Groom Law Group, Chartered, Washington, DC, for Defendants McBride & Son Management Company, LLC, John F. Eilermann, Jr., Michael D. Arri, Andrea Templeton, McBride & Son Capital, Inc.

Lars C. Golumbic, Shaun Group Gates, Pro Hac Vice, Groom Law Group, Chartered, Washington, DC, for Defendants The McBride & Son Employee Stock Ownership Plan Administrative Committee, McBride & Son Companies, LLC, Jeffrey Schindler, Jeffrey Todt.

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

*1 Three participants in the McBride & Son Employee Stock Ownership Plan have sued the Plan's sponsor, corporate officers of the sponsor, and the Plan's trustee, alleging that they have violated their fiduciary duties under the Employee Retirement Income Security Act (ERISA). The claims that the plaintiffs assert in their second amended complaint arise mainly out of two transactions. The first is a 2013 reorganization of McBride & Son that, according to the plaintiffs, the defendants structured and conducted in order to strip valuable assets from the Plan and ultimately convert them to their own benefit. The second transaction is the 2017 sale of all the Plan's assets to the Plan sponsor for a value that the plaintiffs contend was below fair market value. The plaintiff also assert claims arising from actions between these two transactions that they claim diluted the value of the Plan's holdings.

The Court dismissed an earlier version the plaintiffs' claims regarding the 2013 reorganization on various grounds but allowed their claims regarding the 2017 sale to proceed against certain defendants. The plaintiffs began discovery and then filed the second amended complaint, which is now before the Court. The Plan's sponsor and its corporate officers have moved to dismiss several of the claims against them, and the Plan's trustee has moved separately to dismiss the claims based on the 2013 reorganization. The Court apologizes to the parties for its lengthy delay in ruling on the motions.

**Background**

McBride & Son Companies, Inc., is a home construction business based in Missouri. Plaintiffs Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski are former McBride & Son employees and participants in its Employee Stock Ownership Plan (ESOP or Plan). They have alleged several violations of ERISA by the Plan's current sponsor, McBride & Son Capital, Inc. (MS Capital); its predecessor entity, McBride & Son Management (MS Management); and the Plan's trustee, GreatBanc Trust Company. They have also sued two of MS Capital's corporate officers, who are also the only members of its board of directors: John Eilermann, Jr., Chief Executive Officer, and Michael Arri, Chief Financial Officer. For convenience, the Court will refer to Eilermann, Arri, MS Management, and MS Capital as "the McBride defendants."

Many of the plaintiffs' claims arise out of a 2013 business reorganization that they allege Eilermann and Arri facilitated, with the involvement of GreatBanc, to appropriate valuable Plan assets to themselves and other corporate officers. Prior to this reorganization, the Plan, which as indicated was an ESOP, was the sole shareholder of McBride & Son Companies. On December 31, 2013, GreatBanc entered into two agreements with MS Management, which at the time was the Plan's sponsor. Eilermann and Arri executed these agreements on behalf of MS Management, which they allegedly controlled. The effect of these agreements was to exchange the entirety of the Plan's equity stake in McBride & Son Companies for shares of a new entity, MS Capital. MS Capital was established as a holding company for all of the equity in McBride & Son Companies, Inc., and it was also designated as the Plan's new sponsor.

 **\*2**  The plaintiffs allege that this reorganization and the resulting exchange of the Plan's McBride & Son Companies stock for MS Capital stock diminished the value of the Plan's assets. First, although the Plan received one share of MS Capital in exchange for each of its 88,201 shares of McBride & Son Companies, the Plan's ownership interest in the business was diluted, because Eilermann and Arri also each received approximately 1,500 shares of MS Capital. Thus, the Plan no longer owned all of the equity in the McBride & Sons construction business and was no longer the exclusive recipient of McBride & Sons distributions to stockholders. Furthermore, the MS Capital shares that were granted to Eilermann and Arri had distribution rights superior to the Plan's shares. These new shares also gave Eilermann and Arri voting rights, which diminished the Plan's control over the business.

After the 2013 reorganization, Eilermann and Arri, the sole board members of MS Capital, had the authority to issue additional shares of MS Capital. Over the next few years, through 2017, they made several distributions of MS Capital shares to themselves and a few other corporate officers. These distributions, the plaintiffs allege, further diluted the Plan's ownership interest in MS Capital. By the end of 2017, Eilermann held approximately 37,000 shares of MS Capital, Arri held roughly 16,500, and other corporate officers collectively held another 12,000 shares. The Plan still held the 88,201 shares it had received during the 2013 business reorganization. Thus, due to the distributions of MS Capital equity to officers, the Plan's ownership interest in MS Capital dropped from ninety-nine percent in 2013 to approximately sixty percent by 2017.

The remainder of the plaintiffs' claims are based on a 2017 sale of all of the Plan's equity in MS Capital back to MS Capital. Eilermann and Arri, acting on behalf of MS Capital, proposed this sale to Plan trustee GreatBanc, which agreed to it. MS Capital then bought all of the Plan's MS Capital shares. The plaintiffs have alleged that the sale price for the Plan's assets was below market value, thereby harming the Plan.

In November 2018, the plaintiffs filed suit on behalf of themselves and others similarly situated against GreatBanc, the McBride defendants, and several other corporate entities and officers associated with MS Capital. The plaintiffs alleged that their conduct relating to the 2013 business reorganization and the 2017 stock sale violated their fiduciary duties under ERISA. In March 2019, the plaintiffs filed an amended complaint, which GreatBanc answered and the remaining defendants moved to dismiss. The Court dismissed the claims relating to the 2013 reorganization, and it dismissed claims against several of the McBride defendants because the plaintiffs failed to plausibly allege their fiduciary status, but it otherwise denied the motion. *Godfrey v. GreatBanc Tr. Co.*, No. 18 C 7918, 2019 WL 4735422, at \*8 (N.D. Ill. Sept. 26, 2019). After conducting some discovery, the plaintiffs filed a second amended complaint in January 2020, which GreatBanc and the McBride defendants have now moved to dismiss.

**Discussion**

The McBride defendants and GreatBanc have moved to dismiss the plaintiffs' second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In ruling on this motion, the Court must accept as true well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). To survive the motion to dismiss, a plaintiff must allege facts that allow a court to reasonably infer that the defendants are liable for the misconduct alleged, rendering the claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A. ERISA fiduciary breach claims**

 **\*3**  The plaintiffs have alleged that by conducting the 2013 reorganization, making the subsequent distributions of MS Capital shares to corporate officers and paying excessive

executive salaries, and executing the 2017 stock sale, the defendants violated fiduciary duties imposed by ERISA. Section 404 of ERISA "imposes general standards of loyalty and prudence that require fiduciaries to act solely in the interest of plan participants and to exercise their duties with the care, skill, prudence, and diligence of an objectively prudent person." *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 679 (7th Cir. 2014); 29 U.S.C. § 1104(a)(1). ERISA section 406 "supplements [this] general fiduciary duty" and prohibits fiduciaries from "caus[ing]" the "direct or indirect[ ] sale or exchange ... of any property" between the plan and a party-in-interest, such as a plan fiduciary, the employer, or an officer or director of the employer. *Fish*, 749 F.3d at 679; 29 U.S.C. §§ 1106(a)(1)(A), 1102(14)(A), (C), (H).

To state a claim for fiduciary breach under ERISA section 404(a), a plaintiff must plausibly allege "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). As to the first element, ERISA defines fiduciary status in "functional terms":

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. 1002(21)(A); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013). The fiduciary status inquiry—element (1) above—simply involves whether a defendant meets this statutory definition. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 564-65 (7th Cir. 2011). In short, a person or entity that acts in the capacity of manager, administrator, or financial advisor to an ERISA plan is a fiduciary. *Brooks*, 729 F.3d at 765.

One implication of ERISA's functional definition of fiduciary status is that a single individual or entity may serve multiple roles—or "wear[ ] two hats"—with respect to the plan; for example, a single entity may be both the plan sponsor and employer of plan participants. *See id.* at 765-66. For this reason, ERISA's requirements and prohibitions may not apply to every act by a defendant who wears both a fiduciary and a non-fiduciary hat with respect to a plan. *See id.* at 766.

A fiduciary is only liable for conduct to which ERISA standards apply. *See King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 724 (7th Cir. 2000); *Brooks*, 729 F.3d at 765. Thus, to satisfy the fiduciary breach element of an ERISA section 404(a) claim, a plaintiff must show (here, plausibly allege) that the defendant's challenged conduct triggered his fiduciary duties. *See Brooks*, 729 F.3d at 765. Consider the example of an employer who is also a plan administrator and therefore has fiduciary status; the employer is liable under ERISA only for conduct that involves administering or managing the plan or its assets, dispending investment advice, or determining benefits. *See id.* The employer's decision to fire an employee, for example, does not fall into any of those categories and would not implicate the employer's fiduciary duties under ERISA, even though this decision might affect the fired employee's plan benefits. *Id.*

**\*4** "Determining which corporate activities implicate fiduciary duties is a nuanced task." *Svigos v. Wheaton Secs., Inc.*, No. 17 C 4777, 2018 WL 587190, at \*7 (N.D. Ill. Jan. 29, 2018). Cases considering the ERISA implications of specific business transactions offer some guideposts. The example above, an employer's decision to terminate an employee, though it "obviously affects the employee's benefits," is "inherently *not* fiduciary in nature," as it does not involve the disposition or management of plan assets. *See Brooks*, 729 F.3d at 766. An employer's decision to modify the terms of an employee-benefit plan is not a fiduciary act either; modification of a plan is analogous to an act by a settlor of a trust. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). The transfer of a plan's assets from one employee-benefit plan to another, however, is a transaction that implicates ERISA fiduciary duties, because it involves management or disposition of plan assets. *See King*, 218 F.3d at 724.

The determination of whether a defendant's challenged conduct triggers his ERISA fiduciary duties is more

complicated where the conduct can be construed as either a fiduciary act or as a business decision that falls outside ERISA's purview. For example, in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court considered a fiduciary breach claim based on an employer's reporting to employees of information regarding the future of their plan benefits. *Id.* at 502-03. The employer in *Varity Corp.* was also the administrator of its employee benefit plan, making it a plan fiduciary. *Id.* at 492. The challenged conduct involved a company-wide meeting at which the employer gave employees falsely optimistic information about the company's business outlook, its financial viability, and the security of employee benefits. *Id.* The Court observed that this meeting reasonably could be construed as either corporate conduct falling outside of ERISA's purview or as a fiduciary act within the scope of ERISA's coverage. *Id.* at 503. Specifically, conveying information about the likely future of plan benefits is a plan administration task, implicating ERISA fiduciary duties, but communicating information about the future of the company is also business conduct by an employer. *Id.* at 502-03. The Court concluded that the context of the employer's statements—representations to plan beneficiaries regarding the future of plan benefits by an entity with "expert knowledge about how their plan worked"— would have led a reasonable employee to believe that the employer was acting in a plan administrator capacity. *Id.*

In short, the fiduciary breach element of a section 404(a) claim first requires a nuanced inquiry into the circumstances of the challenged conduct to determine whether ERISA's standards apply to that conduct. If the answer is yes, then the Court must assess whether the conduct, as alleged, constitutes a breach of the duties set forth in section 404(a). *See Allen*, 835 F.3d at 678. If the answer to this question is also yes, then the analysis of the plaintiff's claim proceeds to the third element, the requirement to show injury. *Howell*, 633 F.3d at 562. At the pleading stage, this requires a plausible allegation that the fiduciary breach "resulted in harm to the plaintiff." *Allen*, 835 F.3d at 678.

### B. Claims based on the 2013 reorganization

#### 1. McBride defendants

Eilermann, Arri, and MS Management have moved to dismiss counts 2, 4, 5, and 6, which allege breaches of ERISA fiduciary duties based on their conduct in connection with the 2013 reorganization. Count 2 is a claim under ERISA section 406, alleging that the reorganization was a prohibited transaction. *See* 29 U.S.C. § 1106(a)(1)(A). Count 4 alleges that the defendants breached their duties of loyalty and prudence under section 404. *Id.* § 1104(a)(1). Count 5 is a claim under section 405(a), which holds co-fiduciaries liable for other fiduciaries' breaches. *Id.* § 1105(a). Count 6 is a claim under section 502(a)(3), which provides for equitable relief from parties, including non-fiduciaries, who knowingly participate in a fiduciary breach. *See* 29 U.S.C. § 1132(a)(3); *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 248-49 (2000).

**\*5** First, the McBride defendants have moved to dismiss Eilermann and Arri from counts 2, 4, and 5, arguing that the plaintiffs have failed to adequately allege their fiduciary status, the first element of an ERISA fiduciary breach claim. *See Allen*, 835 F.3d at 678. The Court concludes that the plaintiffs have met this requirement.

An ERISA fiduciary is one who exercises control over "management or disposition of [the plan's] assets" or administration of the plan. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 913 (7th Cir. 2013); 29 U.S.C. § 1002(21)(A). The plaintiffs have alleged that MS Management was named as a Plan administrator in the documents that governed the Plan at the time of the reorganization. MS Management therefore had fiduciary status based on its authority over Plan administration. 29 U.S.C. § 1002(21)(A)(iii); *see Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006). The plaintiffs have further alleged that Eilermann and Arri were the only board members of MS Management and that they had exclusive control over the entity in administering the Plan. Based on these allegations, the Court concludes that the plaintiffs have sufficiently alleged that Eilermann and Arri were Plan fiduciaries at the time they effected the 2013 reorganization on behalf of MS Management. *See, e.g., Svigos*, 2018 WL 587190, at *8-9 (concluding, on a Rule 12(b)(6) motion, that upper-level executives of administrator of ESOP plan were sufficiently alleged to have acted as ERISA fiduciaries by "exercise[ing] de facto or effective control over a Plan's ... assets"); *Spires v. Schools*, 271 F. Supp. 3d 795, 802-03 (D.S.C. 2017) (similar). *See generally Leigh v. Engel*, 727 F.2d 113, 133-35 (7th Cir. 1974) (corporate officers are fiduciaries to the extent they exercise control or authority over ERISA plan).

The defendants next argue that the Court should dismiss counts 2, 4, and 5 because the plaintiffs have failed to plausibly allege a fiduciary breach. They argue that the 2013 reorganization was a corporate decision and not a fiduciary act regulated under ERISA. This argument also lacks merit,

at least for purposes of the present motion. To succeed on an ERISA fiduciary breach claim, a plaintiff must show—or here, plausibly allege—that a defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Brooks*, 729 F.3d at 765 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000)). The plaintiffs have plausibly alleged that the 2013 business reorganization was an act subject to ERISA's fiduciary standards, because it involved disposition of the Plan's assets—in fact it involved disposition of *all* of the Plan's assets. *See id.* Prior to the 2013 reorganization, the Plan was the exclusive shareholder of the construction business, McBride & Son Companies, Inc., and these shares were the Plan's only assets. Via the reorganization, the Plan's shares were all converted to shares of a new entity, MS Capital.

The plaintiffs have alleged that the exchange of McBride & Son Companies shares for MS Capital shares was more than a mere change in name, because the MS Capital stock received by the plan in return for the McBride & Sons stock was less valuable. First, the Plan was not the exclusive shareholder of MS Capital, and thus after the reorganization, it was no longer the exclusive recipient of distributions to shareholders. Second, the Plan's MS Capital shares had distribution rights inferior to those that went along with the interests that Eilermann and Arri, on behalf of MS Capital, granted to themselves. Third, the Plan had less control over MS Capital than it did over McBride & Son Companies, because the MS Capital shares issued to Eilermann and Arri included voting rights. Because the 2013 business reorganization involved disposition of the Plan's assets—exchange of the McBride & Son Companies equity for MS Capital equity—the 2013 reorganization was a transaction that implicated ERISA fiduciary duties. *See King*, 218 F.3d at 724.

**\*6** The McBride defendants argue that the Court previously ruled that the 2013 reorganization did not involve fiduciary acts and that this finding is now the law of the case and cannot be revisited. "[T]he law-of-the-case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided" in previous stages of the case. *United States v. Robinson*, 724 F.3d 878, 887 (7th Cir. 2013) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). It "is a discretionary doctrine, not an inflexible dictate." *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018). The Court's previous determination was that based on the allegations in the plaintiffs' first amended complaint, the 2013 reorganization was a business decision, not a fiduciary act. In that version of the complaint,

however, the plaintiffs made only conclusory allegations that the defendants effected the reorganization for the benefit of corporate officers because they gained some equity in MS Capital. These were "naked assertions," *see Iqbal*, 556 U.S. at 678, that were not sufficient to support a reasonable inference that fiduciary conduct was involved.

After the benefit of some discovery, the plaintiffs filed a second amended complaint. This complaint includes more particularized factual allegations—discussed above—regarding the conduct of Eilermann and Arri in executing the 2013 reorganization. These factual allegations, unlike those in the first amended complaint, support a plausible inference that the 2013 business reorganization involved fiduciaries' exercise of control over Plan assets. Faced with these more developed allegations, it is appropriate for the Court to revisit its prior finding. *See Chi. Joe's Tea Room*, 894 F.3d at 818 (holding that it was appropriate for court to revisit its earlier ruling after record in case was developed further); *cf. Allen*, 835 F.3d at 678 ("ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."). For these reasons, the Court's ruling on the second amended complaint does not run afoul of the law of the case doctrine. The Court denies the motion to dismiss Eilermann, Arri, and MS Management from counts 2, 4, and 5.

Finally, Eilermann, Arri, and MS Capital have moved to dismiss count 6, in which plaintiffs allege they knowingly participated in a fiduciary's ERISA violation. They argue that the plaintiffs have failed to plausibly allege that any of them participated in the 2013 business reorganization. "Participation" for the purposes of a section 502(a)(3) claim means "assisting or facilitating" the fiduciary breach. *See Godfrey*, 2019 WL 4735422, at \*7 (citing *Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004)). For the reasons already discussed, the plaintiffs have alleged that Eilermann and Arri, acting on behalf of MS Management, carried out the transaction under which all the Plan's equity in the McBride & Son Companies was exchanged for MS Capital stock. Plaintiffs have adequately alleged Eilermann and Arri's liability under ERISA section 502(a)(3) as knowing participants.

The plaintiffs have failed to allege, however, any conduct by MS Capital that would constitute assisting or facilitating the 2013 business reorganization. The plaintiffs point to their allegation that Eilermann and Arri, who were the exclusive board members of MS Capital, effected the reorganization.

But plaintiffs have alleged that Eilermann and Arri were acting on behalf of MS Management, not MS Capital, during the reorganization. The complaint contains no allegations of any action or inaction by MS Capital that facilitated the 2013 reorganization. The Court therefore dismisses MS Capital from count 6.

In sum, the Court denies the McBride defendants' motion to dismiss counts 2, 4, 5, and 6, except to dismiss MS Capital from count 6.

### 2. GreatBanc

GreatBanc has moved to dismiss counts 1, 3, and 5, which are all based on its alleged fiduciary breaches associated with the 2013 reorganization. Count 1 alleges a violation of ERISA section 406(a), which prohibits fiduciaries from causing the direct or indirect sale or exchange of property between the Plan and a party-in-interest, such as a plan fiduciary. Count 3 alleges breach of duties of loyalty and prudence under section 404(a). Finally, count 5 is a co-fiduciary liability claim under section 405.

 *7  GreatBanc first argues that the Court should dismiss all three of these claims because the reorganization was a corporate business decision by the McBride defendants and not a fiduciary act subject to the standards set forth in ERISA sections 404(a) and 406(a). But, as explained above, the plaintiffs' factual allegations support a plausible inference that the reorganization was a fiduciary act subject to ERISA standards because it involved the exercise (and transfer) of control over Plan assets. And the plaintiffs have sufficiently alleged that GreatBanc, the Plan's trustee, was acting in a fiduciary capacity with respect to this reorganization, because it entered into the agreements that exchanged of the Plan's shares of McBride & Son Companies for shares of MS Capital.

GreatBanc argues that it should nevertheless be dismissed from count 1 because Eilermann and Arri effected the 2013 reorganization via MS Management and therefore GreatBanc did not "cause" a prohibited transaction between the Plan and a fiduciary. To prevail on a claim under ERISA section 406(a), "a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction." *Lockheed Corp.*, 517 U.S. at 888. The plaintiffs have alleged that GreatBanc entered into the agreements that exchanged all of the Plan's holdings in McBride & Son Companies for MS Capital stock. If so, then GreatBanc's actions "caused" a direct exchange of the Plan's assets with MS Capital, a plan fiduciary. The Court therefore denies GreatBanc's motion to dismiss count 1.

Finally, GreatBanc seeks dismissal of count 3, arguing that the plaintiffs have not alleged any losses from the 2013 reorganization. To state a claim for breach of an ERISA fiduciary duty, a plaintiff must plausibly allege that the breach caused harm. *Allen*, 835 F.3d at 678. GreatBanc argues that the plaintiffs have failed to allege harm because the MS Capital stock prices increased, rather than decreased, following the 2013 reorganization. Because the value of the Plan's assets has gone up, GreatBanc contends, the Plan has not suffered any harm.

This argument lacks merit, at least for purposes of the present motion. The plaintiffs have claimed losses caused by the reorganization because they lost their exclusive entitlement to all of the distribution of gains of the McBride & Son Companies business. Thus, they missed out on amounts that were thereafter distributed to other corporate shareholders. Additionally, because the Plan's MS Capital shares had inferior distribution rights to those of the corporate officers, they were less valuable than the Plan's original shares of McBride & Sons Companies. These allegations support a reasonable inference that the plaintiffs were harmed by the 2013 reorganization.

For these reasons, the Court denies GreatBanc's motion to dismiss counts 1, 3, and 5.

### C. MS Capital stock distributions to corporate officers

#### 1. McBride defendants

Counts 8 (breach of duties of loyalty and prudence), 9 (co-fiduciary liability), and 10 (knowing participation in fiduciary breach) are all based, at least in part, on conduct associated with the stock distributions to MS Capital officers between 2013 and 2017.

The McBride defendants have moved to dismiss Eilermann and Arri from counts 8 and 9, arguing that the plaintiffs' allegations do not support a reasonable inference that they had fiduciary status when the stock distributions were made. This argument lacks merit. The plaintiffs have alleged that since December 31, 2013, when the first stock distribution was made to Eilermann and Arri, MS Capital has been designated the Plan administrator in the documents that govern the Plan. Because MS Capital had control over Plan administration, it met the statutory definition of ERISA fiduciary. 29

U.S.C. § 1002(21)(A)(iii). As the Court has discussed, the plaintiffs have alleged that Eilermann and Arri were the only members of MS Capital's board and that they exercised exclusive control over the entity in administering the Plan. For purposes of a motion to dismiss, the plaintiffs have plausibly alleged their fiduciary status in connection with MS Capital's authorization of the distribution of additional stock to its officers, which had the effect of diluting the Plan's interest in MS Capital.

**\*8** The McBride defendants next argue that the Court should dismiss count 8 because the stock distributions were business decisions and not fiduciary acts subject to ERISA standards. The plaintiffs respond that because these were self-interested transactions, they fall within ERISA's purview.

The Court begins by examining how ERISA addresses self-interested transactions by an ERISA fiduciary. ERISA section 404 imposes a duty of loyalty, requiring a plan fiduciary to act "solely in the interest of the participants and beneficiaries." 29 U.S.C § 1104(a)(1). Because fiduciaries may serve multiple roles with respect to an employee-benefits plan, ERISA's duty of loyalty requires that they "wear only one [hat] at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225. This means that a plan fiduciary should "avoid placing [himself] in a position where [his] acts as officer[ ] or director[ ] of the corporation will prevent [his] functioning with complete loyalty" to Plan participants and beneficiaries. *See Leigh*, 727 F.2d at 125 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)). ERISA section 406 "prohibits self-dealing" and imposes a duty on a fiduciary to "avoid[ ] conflicts of interest" with the Plan's participants. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142-43 & n.10 (1985).

The section 404(a) duty of loyalty is not so broad, however, that it prohibits an ERISA fiduciary from taking any action that would be adverse to the interests of Plan participants. *Pegram*, 530 U.S. at 225. As mentioned above, an employer who is also a plan fiduciary may fire an employee who is a plan participant, and although this may affect the participant's benefits, it is a business decision that does not implicate the employer's ERISA duty of loyalty. *Id.* This personnel decision is not one that an employer undertakes in its ERISA fiduciary capacity, because it does not involve management or disposition of the plan's assets. *Id.*; *see also Brooks*, 729 F.3d at 766. Thus, ERISA's duty of loyalty permits a fiduciary to take actions that put a fiduciary's interests in tension with the interests of plan participants and beneficiaries. *See Pegram*, 530 U.S. at 225.

To determine whether a corporate officer's decision involves a fiduciary act under ERISA, a court must determine whether the decision gives rise to an incompatibility between the interests of the fiduciary and plan participants that is a permissible tension or an impermissible conflict of interest. *See Pegram*, 530 U.S. at 225. The Seventh Circuit has not yet decided whether a compensation decision by a corporate officer who is also a plan fiduciary raises a conflict of interest that triggers ERISA liability. The Ninth Circuit has considered the issue, however, and ruled that where a plan's assets include the employer's stock, a corporate officer/plan fiduciary's "business decisions from which that individual could directly profit," including setting his own compensation, may be an act that triggers ERISA fiduciary duties. *Johnson v. Courtier*, 572 F.3d 1067, 1077 (9th Cir. 2009). The court concluded that in this context, an action by a corporate officer who is also a plan fiduciary triggers ERISA standards where two conditions exist: the plan's assets include employer stock and the officer's decision is one from which he could directly benefit. *Id.* Without such a rule, the court observed, plan fiduciaries engaging in "obvious self-dealing" would be protected from ERISA liability, and this would run contrary to the duties of loyalty and prohibition against self-dealing in ERISA sections 404(a) and 406(a). *Id.*

**\*9** The Court agrees with *Johnson* that when a plan's assets include employer stock, ERISA fiduciary standards apply to a corporate officer's "business decisions from which that individual could directly profit." *See Johnson*, 572 F.3d at 1077. Other district courts have also embraced this principle. *See, e.g.*, *Spires*, 271 F. Supp. 3d at 803 (D.S.C. 2017) (corporate officers' transferring company assets to themselves, where plan owned almost all of the company stock, was self-dealing that triggered ERISA standards). In *Svigos*, for example, Judge John Blakey ruled that where a plan's assets include employer stock, corporate officers "act[ ] as plan fiduciaries when they ... engage[ ] in self-dealing transactions." *Svigos*, 2018 WL 587190, at \*8.

Applying this rule, the Court concludes that the plaintiffs' allegations support a plausible fiduciary breach claim against Eilermann and Arri for their conduct related to the MS Capital stock distributions. The plaintiffs have alleged that the Plan's only asset was equity in MS Capital. Acting on behalf of MS Capital, Eilermann and Arri made stock distributions to themselves and other high-ranking members

of management between 2013 and 2017 such that the Plan's ownership interest in MS Capital dropped from well over ninety-five percent in 2013 to around sixty percent by the end of 2017. At that point, Eilermann held approximately twenty-four percent of the MS Capital equity, Arri held ten percent, and other corporate officers held another five percent or so. The plaintiffs have plausibly alleged that by making these distributions of MS Capital stock, Eilermann and Arri placed their personal interests ahead of those of the Plan's participants and beneficiaries. In short, the plaintiffs have plausibly alleged that these were self-interested transactions to which ERISA standards apply. The Court therefore denies the motion to dismiss Eilermann and Arri from count 8.

As for MS Capital, the plaintiffs' allegations do not support a plausible fiduciary breach claim based on the stock distributions to corporate officers. For MS Capital, setting executive compensation is a business decision that does not implicate ERISA fiduciary standards. The Court reached the opposite conclusion with respect to Eilermann and Arri because they each directly benefited from the distributions, making the distributions self-interested transactions triggering their ERISA fiduciary duties. The plaintiffs have not alleged that MS Capital experienced any benefit that would raise self-dealing concerns and trigger ERISA duties. ERISA does not impose liability any time a company's business expenditure affects the value of a plan's stock in the company. The Court therefore dismisses MS Capital from count 8.

Next, the McBride defendants have moved to dismiss count 9, a co-fiduciary liability claim for the fiduciary breaches associated with the stock distributions to corporate officers. The defendants argue that because count 8 does not state a plausible claim for a fiduciary breach based on the stock distributions, there cannot be any co-fiduciary liability. Because the Court has concluded that count 8 states a plausible fiduciary breach claim against Eilermann and Arri, the defendants are not entitled to dismissal of count 9.

Finally, the McBride defendants have moved to dismiss count 10 against Eilermann and Arri. This is a claim under ERISA section 502(a)(3), which creates liability for parties, including non-fiduciaries, who knowingly participate in a fiduciary breach. *Harris Tr. & Sav. Bank*, 530 U.S. at 248-49; 29 U.S.C. § 1132(a)(3). "Participation" for a knowing participation claim means "assisting or facilitating" the fiduciary breach. *See Godfrey*, 2019 WL 4735422, at *7. The defendants argue that the plaintiffs have failed to allege any conduct that constitutes participation in the alleged fiduciary breach associated with the distributions of MS Capital stock to officers. This argument lacks merit. The plaintiffs have plausibly alleged that Eilermann and Arri each assisted the other's claimed breach of the duty of loyalty. These two were the only members of MS Capital's board, and together, acting on behalf of MS Capital, they made distributions of the company's stock to themselves. The Court denies the motion to dismiss count 10.

*10 In sum, the Court dismisses MS Capital from count 8 but otherwise denies the defendants' motion to dismiss counts 8, 9, and 10.

**2. GreatBanc**

GreatBanc has moved to dismiss count 7 and count 9, which are both based on alleged inaction by GreatBanc with respect to the MS Capital stock distributions to officers. Count 7 is a claim for breach of GreatBanc's ERISA section 404(a) fiduciary duties of loyalty and prudence, and count 9 is a co-fiduciary liability claim. GreatBanc does not dispute its status a Plan fiduciary, nor could it. 29 U.S.C §§ 1002(21)(A), 1103(a); *see Jenkins*, 444 F.3d at 924. Rather, it argues that it is not liable for any fiduciary breach because the stock distributions were business decisions regarding executive compensation, and an ERISA fiduciary does not have a duty to police an employer's business decisions.

Plan trustees, like other ERISA fiduciaries, have a duty of prudence under ERISA section 404(a). 29 U.S.C. § 1104(a). Prudence requires the trustee to act with the care, skill, prudence, and diligence of an objectively prudent person. *Fish*, 749 F.3d at 679. A plan trustee's duty of prudence includes a continuing duty to monitor the plan's investments. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). The fiduciary duties in section 404(a) also require fiduciaries to communicate to plan participants "material facts affecting the[ir] interests." *Solis v. Current Dev. Corp.*, 557 F.3d 772, 777 (7th Cir. 2009). This is an "affirmative obligation" to communicate, regardless of whether a beneficiary requests information. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010). Where, as here, an ERISA plan is an employee stock ownership plan, a trustee's duty of prudence is heightened, because investment diversification is not available to "buffer the risk." *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 732 (7th Cir. 2006).

"A fiduciary's failure to exercise his or her discretion—*i.e.*, to balance the relevant factors and make a reasoned decision

as to the preferred course of action—under circumstances in which a prudent fiduciary would have done so is a breach of the prudent man standard of care." *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 796 (7th Cir. 2011). A plaintiff may bring a claim for breach of duty of prudence if a trustee fails to monitor a plan's investment and respond to changes in circumstances to protect the interests of participants. *See Armstrong*, 446 F.3d at 734. In *Armstrong*, the Seventh Circuit held that a "trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent." *Id.* at 734. The breach of duty of prudence claim in *Armstrong* was asserted against an employee stock ownership plan's trustee that had failed to update its company stock valuation in response to changed circumstances such as acquisition of another business. *Id.*

Similarly, the plaintiffs have alleged that GreatBanc failed to act prudently to protect Plan interests by responding to the stock distributions to officers that diluted the Plan's proportion of MS Capital equity. The plaintiffs allege that MS Capital bylaws authorized GreatBanc to appoint independent members to the board of MS Capital. Without independent members on its board, the plaintiffs allege, MS Capital was under the exclusive control of Eilermann and Arri. According to the plaintiffs, this exclusive control allowed these officers to make stock distributions to themselves between 2013 and 2017. The plaintiffs contend that a prudent investor would have appointed independent board members to remove MS Capital from the exclusive control of Eilermann and Arri. This, the plaintiffs contend, might have protected the interests of Plan participants by limiting the officers' self-interested stock distributions.

**\*11** The plaintiffs have also alleged that other inaction by GreatBanc was imprudent and constituted a breach of its ERISA duties to Plan participants. Specifically, the plaintiffs allege, GreatBanc failed to comply with its obligations to monitor the Plan's MS Capital stock and notify participants about the stock distributions to officers. According to the plaintiffs, these distributions were material facts affecting the Plan's interests because they diluted the Plan's proportion of MS Capital equity and therefore substantially diminished the value of the Plan's assets. These allegations of inaction by GreatBanc support a plausible claim for breach of GreatBanc's duty of prudence under section 404(a).

GreatBanc's argument that it cannot be held liable for failure to prevent the stock distributions is unavailing. GreatBanc may be correct that a trustee cannot be liable under ERISA "for failure to override an employer's business decision." *See Armstrong v. Amsted Indus., Inc.*, No. 01 C 2963, 2004 WL 1745774, (N.D. Ill. July 30, 2004). But, as explained above, the plaintiffs' fiduciary breach claim against GreatBanc is based on allegations of its other conduct—failure to monitor the Plan's investments, report dilution of the Plan's MS Capital equity to Plan participants, and appoint independent members to the board of MS Capital—that do give rise to a plausible claim under ERISA section 404(a).

Finally, GreatBanc has moved to dismiss count 9, in which the plaintiffs allege that GreatBanc knowingly participated in the McBride defendants' fiduciary breaches associated with the stock distributions. A knowing participation claim under ERISA section 502(a)(3) requires a plaintiff to allege that a fiduciary violated a substantive provision of ERISA and that the defendant knowingly participated in the conduct that constituted the violation. 29 U.S.C. § 1132(a)(3); *Daniels*, 313 F. Supp. 2d at 808. GreatBanc argues that this claim should be dismissed because there has not been any fiduciary breach. In GreatBanc's view, the stock distributions made by Eilermann and Arri were business decisions, not fiduciary acts. The Court has already rejected this argument made by the McBride defendants and likewise rejects it from GreatBanc.

GreatBanc also seeks dismissal from count 9 because it contends that the plaintiffs have failed to allege any conduct that would constitute participation in the fiduciary breach associated with the officer stock distributions. Again, "participation" for the purposes of a knowing participation claim means assisting or facilitating the fiduciary's breach. *Godfrey*, 2019 WL 4735422, at \*7. The plaintiffs have alleged that GreatBanc facilitated these stock distributions through inaction such as its failure to appoint independent members to the board of MS Capital. Whether the plaintiffs will be able to prove that this inaction, did, in fact, facilitate the officers' self-interested stock distributions is a question for a later stage of litigation. At this point, drawing all reasonable inferences in the plaintiffs' favor, the Court concludes that the allegations support a plausible knowing participation claim.

Finally, GreatBanc argues that the Court should dismiss both count 7 and count 9 because the plaintiffs' allegations do not support a plausible inference that the stock distributions resulted in executive compensation that was excessive. But whether the compensation was excessive is not an essential element of either a fiduciary breach or knowing participation claim. As mentioned above, the elements of a fiduciary breach

claim are (1) fiduciary status, (2) breach, and (3) harm to the plaintiff. *See Allen*, 835 F.3d at 678. And a knowing participation claim includes those three elements and two additional elements: knowing conduct by the defendant and participation or facilitation of the fiduciary breach. *See Godfrey*, 2019 WL 4735422, at *7. GreatBanc does not point to any authority suggesting that proof of excessive compensation is an element of these claims.

*\*12* For these reasons, the Court denies GreatBanc's motion to dismiss counts 7 and 9.

**D. 2017 stock transfer**

The defendants argue that the plaintiffs have failed to plausibly allege the fiduciary status of Eilermann and Arri with respect to the 2017 stock sale, and they should therefore be dismissed from counts 12 (prohibited transaction under ERISA section 406), 14 (breach of duties of loyalty and prudence), and 15 (co-fiduciary liability). The Court agrees.

All three of these claims are based on alleged breaches of ERISA fiduciary duties. Thus the "threshold question" is whether the defendants were wearing their fiduciary hats—exercising control over the management or disposition of the Plan's assets—when taking the challenged action. *See Leimkuehler*, 713 F.3d at 913. The plaintiffs have alleged that Eilermann and Arri, acting on behalf of MS Capital, proposed to buy the Plan's MS Capital stock. When GreatBanc agreed to this sale proposal, Eilermann and Arri, acting on behalf of the MS Capital, bought MS Capital stock from the Plan. Thus, the plaintiffs have alleged that the role of Eilermann and Arri in this transaction was that of the purchaser of the Plan's shares. The plaintiffs have not alleged that Eilermann and Arri exercised any authority to approve the sale on behalf of the Plan. The plaintiffs have therefore failed to plausibly allege the fiduciary status of these two defendants with respect to the 2017 stock sale. The Court dismisses them from counts 12, 14, and 15.

### Conclusion

For the foregoing reasons, the Court dismisses MS Capital from counts 6 and 8, and Eilermann and Arri from count 12, 14, and 15, but it otherwise denies the McBride defendants' motion to dismiss [dkt. no. 111]. And the Court also denies GreatBanc's motion to dismiss [dkt. no. 114]. The defendants are directed to answer the remaining claims by no later than September 17, 2020. The parties are directed to file on September 2, 2020 a joint status report describing the status of discovery. The case is set for a status hearing on September 8, 2020 at 8:30 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

**All Citations**

Slip Copy, 2020 WL 4815906

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 10