IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRENDA SZALANSKI, on behalf of
herself, individually, and on behalf of
all others similarly situated,

                    Plaintiff,                    OPINION AND ORDER

   v.                                                       19-cv-940-wmc

MIKE ARNOLD, LEA GEREND, PHIL
TROIA, MIKE WHALEY, and GREATBANC
TRUST COMPANY,

                    Defendants,

and

PDQ FOOD STORES, INC. EMPLOYEE
STOCK OWNERSHIP PLAN,

                    Nominal Defendant.

---

      In this putative class action, plaintiff Brenda Szalanski, a former employee of PDQ Food Stores, Inc., and a participant in the PDQ Employee Stock Option Plan ("ESOP"), contends that four PDQ executives and GreatBanc Trust Company, the Trustee of the ESOP, breached their fiduciary duties in negotiating and approving PDQ's October 2017 sale to Kwik Trip in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*.  Before the court are two motions to dismiss, one by the individual defendants and one by defendant GreatBanc.  (Dkt. ##16, 19.)  For the reasons that follow, the court will grant both motions.  Since GreatBanc's motion only applies to portions of the claims asserted against it, however, the case also will proceed against that defendant.

ALLEGATIONS OF FACT[1]

A. **The Parties**

Plaintiff Brenda Szalanski was an employee of PDQ Food Stores from October 2000 until October 2017, and she participated in the PDQ Employee Stock Option Plan ("ESOP") for the final eight years of her employment. As a result, she remains a participant in the ESOP.

Plaintiff asserts claims against defendant GreatBanc Trust Company and four executives of PDQ, defendants Mike Arnold, Lea Gerend, Phil Troia and Mike Whaley, all arising out of the October 2017 sale of PDQ's assets to Kwik Trip, Inc. Before the sale, Arnold serving as PDQ's President, while Troia and Whaley were both PDQ's Vice Presidents. All three were also members of the PDQ Board of Directors. While Gerend did not sit on the board, she did sign the ESPO's Form 5500s filed with the United States Department of Labor from 2009 to 2017, as its "administrator."

B. **The PDQ ESOP**

The ESOP was established in 2009, when PDQ owner, Jeff Jacobson, arranged a sale of his shares in the company to the ESOP, ostensibly to "provide retirement benefits for eligible employees." (Compl. (dkt. #1) ¶¶ 29-30.) Following this sale, the ESOP owned all outstanding stock in PDQ, which was employee-owned until sold to Kwik Trip. During

---

[1] For purposes of defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

the eight years from 2009 to 2017, plaintiff and other ESPO participants went from owning PDQ stock worth $0 to owning stock sold at over $17,500 per share.

According to the Plan Document, which the individual defendants attach to their motion to dismiss (Ind. Defs.' Opening Br., Ex. 2 (dkt. #2102)), PDQ was both Plan Administrator and named fiduciary of the Plan, with full authority to act with respect to its operation and administration. (*Id.* §§ 1.5, 8.2.) The Plan Document also granted PDQ the authority to designate another to perform the role of administrator. (*Id.* §§ 8.2(b), (c).) Similarly, PDQ was required to appoint a trustee to "receive and hold in trust all contributions, and Income, paid into the Trust Fund." (*Id.* § 9.1.) Pursuant to the Plan Document, PDQ and the named trustee were then to enter into an agreement to provide for the administration of the ESOP. (*Id.* § 9.2.)

### C. The PDQ-Kwik Trip Transaction

For over sixty years, PDQ operated a series of convenience stores primarily in and around the Madison and Milwaukee areas. For various reasons, PDQ's Board of Directors decided to seek a buyer for the company sometime around 2017. To that end, the Board authorized company representatives to speak with and evaluate potential purchasers. Based on these evaluations, the Board agreed to enter into exclusive negotiations with Kwik Trip.

With respect to the ESOP, PDQ also hired GreatBanc in March 2017 to act as the "sole discretionary trustee" of the ESOP in anticipation of PDQ's potential sale. (Ind.

Defs.' Opening Br., Ex. 1 (dkt. #21-1) ("Information Sheet") 14; Compl. (dkt. #1) ¶ 11.)[2] Upon retaining GreatBanc as trustee for the PDQ ESOP, defendants Arnold, Whaley and Troia resigned as PDQ ESTOP trustees. Specifically, GreatBanc was engaged to determine whether the transaction was "in the best interest of the ESOP participants and beneficiaries." (Information Sheet (dkt. #21-1) 14.) In that capacity, GreatBanc -- and *only* GreatBanc -- was authorized to decide whether voting in favor of or against the transaction would violate ERISA. The Board also hired Enterprise Services, Inc. ("ESI"), a third-party financial consulting firm, to evaluate the fairness of the transaction to the company and its shareholder.

After extensive negotiations, Kwik Trip agreed to purchase substantially all of PDQ's assets for $67,400,000 ("the Transaction"). On July 14, 2017, the parties signed and executed the Asset Purchase Agreement by which Kwik Trip acquired 100% of the assets of PDQ. Some of these funds were held back to satisfy certain liabilities and expenses of PDQ, but the remaining proceeds were distributed to the participants in the PDQ ESOP.[3] In the Information Statement sent to all ESOP participants, the estimated

---

[2] Plaintiff alleges that GreatBanc's role in this transaction is set forth in a confidential information statement dated September 1, 2017, provided to participants in the ESOP. (Compl. (dkt. #1) ¶ 11.) The individual defendants attach the information statement to their opening brief. (Ind. Defs.' Opening Br., Ex. 1 (dkt. #21-1).) Because it is referenced in plaintiff's complaint and central to her claims, the court may consider the document for purposes of deciding the present motions to dismiss. *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

[3] One liability PDQ was contractually obligated to pay at the time of the transaction those amounts payable for certain stock appreciation rights ("SARs") that each individual defendant had earned as part of the PDQ Food Stores, Inc. Stock Appreciation Rights Plan, which was adopted in April 2009. This SARs Plan was adopted to retain and incentivize key employees vital to PDQ and reward the success of certain other, individual employees.

net purchase amount to be distributed to the PDQ ESOP participants would be $47,120,500, or approximately $17,500 per share of PDQ Stock. The individual defendants note that the share value was approximately $10,380 per share higher than the value of PDQ stock just nine months before the agreed upon sale.

Further, in its role as Trustee of the ESOP, GreatBanc hired an independent, outside legal advisor and financial advisor, Prairie Capital, to review the Transaction. Prairie Capital generated a written opinion in which it advised Great Banc that the transaction was fair to the ESOP.

On September 1, 2017, participants of the PDQ ESOP were all sent a copy of the "Information Statement" -- an 88-page document detailing the proposed Transaction with Kwik Trip, which included a summary of the proposed financial terms of the deal, the fairness opinion of Prairie Capital, the role of GreatBanc as the Trustee, and potential risk factors associated with the proposed transaction. The Information Statement also disclosed each of the five, challenged payments described below.

The PDQ Board unanimously voted to approve the Transaction; in so doing, the Board conducted its own separate discussions and voted on each aspect of the transaction, including the additional compensation to be received by the director defendants. None of the director defendants took part in these conversations. The Board voted to recommend that Plan participants direct GreatBanc as Trustee to vote for the proposal to approve the transaction in its entirety. The ESOP participants agreed, and GreatBanc followed the directive received from the voting participants by voting the ESOP's shares in favor of the Transaction, which closed on October 10, 2017. At that time, *all* plain participants became

fully vested in their ESOP accounts. The proceeds of the sale, minus liabilities and expenses, were then distributed to the ESOP participants pro rata, and the ESOP was terminated effective January 31, 2018, by resolution of the PDQ Board.

### D. Challenged Payments

Szalanski specifically challenges the following, five "side payments" to the individual defendants related to the larger Transaction:

- Kwik Trip's payment of $1,000,000 to each of the individual defendants in exchange for their promise, through separate agreements entered into with Kwik Trip, not to compete with Kwik Trip's new business for seven years after the Transaction;

- Kwik Trip's option at some point after the Transaction to purchase other property owned by Mike Arnold for $2 million;

- PDQ's payment of $4.96 million to the individual defendants owed under a Stock Appreciation Rights Plan also established eight years before the Transaction;

- Severance payments to approximately thirty office and division PDQ employees, including the individual defendants; and

- An incentive to the individual defendants to earn from Kwik Trip up to $1.85 million for PDQ (and the ESOP) and up to $1.85 million for themselves by successfully negotiating long-term leases or purchases of select properties on behalf of Kwik Trip after the transaction.

OPINION

Although overlapping, plaintiff asserts five counts against defendants under ERISA. In Count I, plaintiff claims that all defendants caused (and in the case of the four individual defendants, knowingly participated in) the October 2017 Transaction in violation of § 406(a). In Count II, plaintiff claims the individual defendants dealt with the assets of the Plan in their own interest in violation of § 406(b). In Count III, plaintiff claims under ERISA § 404(a)(1)(A) and (B), that: the individual defendants breached their fiduciary duty by structuring the Transaction to include side-payments; and GreatBanc breached its fiduciary duty by approving those side payments as part of the transaction. In Count IV, plaintiff claims that the individual defendants failed to monitor GreatBanc's performance as the Plan's Trustee, also in violation of ERISA § 404(a)(1)(A) and (B). Finally, in Count V, plaintiff claims that all defendants are liable as co-fiduciaries for knowing breach of their co-fiduciaries and failing to take any steps to remedy them, again in violation of ERISA § 404(a)(1)(A) and (B).

The individual defendants and GreatBanc filed separate motions to dismiss. Since the motions vary in substance, the court will take up the arguments presented in those two motions in turn.

I. The Individual Defendants' Motion to Dismiss

As explained above, the individual defendants consist of the three director defendants -- Mike Arnold, Phil Troia and Mike Whaley -- and the administrator defendant Lea Gerend. Since the arguments presented by the parties treat the director defendants as distinct from Gerend, the court will begin with defendants' arguments as to Gerend only.

7

As alleged, Gerend's role is limited to signing the Plan's Form 5500s filed with the United States Department of Labor from 2009 to 2017. (Compl. (dkt. #1) ¶¶ 8, 61.) Based on this limited allegation, the individual defendants contend that Gerend was simply fulfilling a ministerial function and, therefore, lacked any discretion in signing. As the Seventh Circuit explained in *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir. 1992), "ERISA makes the existence of discretion a sine qua non of fiduciary duty." *Id.* at 129 (citing 29 U.S.C. § 1002(21)(A)). The court further held that the plan administrator in *Pohl* "had no discretion" because "[i]ts function under the plan was clerical, mechanical, ministerial—not discretionary. It performed the list of ministerial functions spelled out in the Department of Labor's regulations under ERISA. 29 C.F.R. § 2509.75–8." *Id.*; *see also Godfrey v. Greatbanc Tr. Co.*, No. 18 C 7918, 2019 WL 4735422, at *3 (N.D. Ill. Sept. 26, 2019) ("[M]inisterial functions like preparing and submitting regulatory filings are not discretionary acts and therefore do not support an inference of fiduciary status.").

In response, plaintiff ignores the Seventh Circuit's holding in *Pohl*. Instead, plaintiff criticizes the Northern District of Illinois' *Godfrey* decision for failing to explain its ruling adequately, then directs the court to other cases where courts noted that a defendant signed a Form 5500, among other factors that indicated the defendant exercised discretion over the plan at issue. *E.g.*, *Mintjal v. Prof'l Benefit Trust*, 146 F. Supp. 3d 981, 992 (N.D. Ill. 2015) (finding that the defendant exercised discretionary control having "owned 100% of the named plan trustee" and "90% of the named trust administrator," held the "CEO and Corporate Trustee" of the named plan trustee, and signed the required 5500 forms);

8

*Donovan v. Mercer*, 747 F.2d 304, 308-09 (5th Cir. 1984) (finding that the defendant exercised discretion having "repeatedly signed documents which identified her as a trustee or administrator of the plan," specifically relying on her signing a deed transferring land held by the plan). (*See also* Ind. Defs.' Reply (dkt. #29) 18-19 (distinguishing additional cases on same basis).)[4] Given that plaintiff's only basis for holding Gerend responsible is her signing regulatory filings, the court agrees with the individual defendants that plaintiff has failed to allege sufficient facts to find that she acted in a fiduciary capacity for purposes of pursuing ERISA claims.

As for the director defendants, they primarily seek dismissal on the basis that in negotiating the terms of the Transaction, they were not acting in a fiduciary capacity, but rather resigned as ESOP trustees once PDQ had hired an independent trustee, co-defendant GreatBanc, to fulfill that role. As such, plaintiff's allegations against the director defendants must be in their *business* capacity, not in their ERISA fiduciary capacity. As the individual defendants point out, the Supreme Court held in *Pegram v. Herdrich*, 530 U.S. 211 (2000), that "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226; *see also Priddy v. Health Care Serv. Corp.*, 870 F.33d 657, 661 (7th Cir. 2017) ("ERISA recognizes that a party might be acting in a fiduciary capacity at some points and in an

---

[4] To be fair, one district court case to which plaintiff cites solely relied on the defendant's signing of a Form 5500 to find a fiduciary relationship, *see In re Calpine Corp. ERISA Litig.*, No. 03 CV 1685, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005), but this court is bound by the Seventh Circuit's decision in *Pohl*, finding that the performance of ministerial functions alone does not qualify as a discretionary act sufficient to establish fiduciary status.

ordinary capacity at other points."). Of course, defendants recognize the hiring of an independent trustee "is not a magic wand that erases fiduciary status," but contend that the complaint does *not* allege that they were still engaging in fiduciary acts in approving the 2017 Transaction. (Ind. Defs.' Reply (dkt. #29) 8.)

In response, plaintiff argues that the complaint nevertheless alleges "four specific respects in which the Director Defendants acted as fiduciaries and exercised discretion with respect to the October 2017 Transaction": (1) by negotiating the terms of the Transaction; (2) by recommending that Plan participants approve it; (3) by appointing and retaining the power to monitor and remove GreatBanc in its capacity as trustee; and (4) by retaining full and complete discretionary authority over the administration of the Plan notwithstanding GreatBanc's appointment as Trustee. (Pl.'s Opp'n (dkt. #24) 11-12.) Taking each argument in turn, plaintiff contends that the negotiation of the terms of the 2017 Transaction constitutes a fiduciary act. Other than distinguishing a case cited by defendants, however, plaintiff stops short of providing any support or reasoning for why the negotiations would constitute a fiduciary act. While the director defendants may have served a more robust role in the challenged transaction than that involved in *Neil v. Zell*, 677 F. Supp. 2d 1010 (N.D. Ill. 2010), plaintiff fails to explain how meeting with prospective purchasers, vetting offers, and negotiating the terms of the sale to Kwik Trip implicate any fiduciary duties the defendant directors had to the ESOP. Based on plaintiff's theory, at least where an individual has worn two hats as a corporate officer and a trustee of an ESOP, ERISA would always govern the conduct of a corporate officer in a sale involving an ESOP, and plaintiff fails to direct the court to any cases to support such

10

a broad reach. Instead, plaintiff directs the court to *Acosta v. Reliance Trust Company*, No. 17 CV 4540, 2019 WL 3766379 (D. Minn. Aug. 9, 2019), but in that case, the court considered an ERISA claim based on allegations that the owners of a company violated ERISA by selling their company *to* an ESOP at allegedly too high of a price. *Id.* at *9. Here, plaintiff's claim concerns the arm's length sale of a company to a third-party that happened to include the ESOP as seller. Indeed, in recognizing that corporate officers can wear multiple hats, courts have rejected, at least implicitly, plaintiff's theory of liability. *E.g.*, *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986) ("ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.").

*Second*, plaintiff contends that the director defendants acted in a fiduciary capacity in recommending that the participants of the ESOP vote in favor of the transaction, citing *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010), for the proposition that "[c]ommunications about 'material facts affecting the interests of beneficiaries' are fiduciary acts subject to the duties of loyalty and care under ERISA." (Pl.'s Opp'n (dkt. #24) 14 (quoting *Kenseth*, 610 F.3d at 466).) However, in *Kenseth*, the Seventh Circuit was *not* deciding whether the defendant was acting in a fiduciary capacity; rather, the court simply explained that as fiduciaries, the defendant had obligations to disclose material information. The other cases cited by plaintiff similarly implicate obligations on the part of fiduciaries to provide truthful information, without analyzing whether the defendants were fiduciaries in the first instance. *See Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991-92 (7th Cir. 1993) (affirming district court's finding that the defendants breached

11

their ERISA fiduciary duties by failing to provide full and complete information with respect to a reimbursement agreement); *Varity Corp. v. Howe*, 516 U.S. 489, 501-05 (1996) (finding plan administrator was acting in fiduciary capacity in miscommunicating impact to benefits in transferring to a subsidiary). Regardless, the problem with plaintiff's claim is the absence of any allegation that the directors made misrepresentations in the materials recommending the Transaction to the ESOP participants in violation of this narrower duty. To the contrary, the Information Statement disclosed each of the five, challenged side payments as described above. Were the director defendants' fiduciary duty as an ESOP trustee any greater than full disclosure then ERISA would have effectively prevented PDQ's president and other corporate officers from negotiating with Kwik Trip at all, which is an absurd result.

*Third*, plaintiff contends that the director defendants were fiduciaries in appointing GreatBanc and retaining the authority to direct GreatBanc. For support, plaintiff directs the court to *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011), in which the Seventh Circuit concluded that "all of the inside and outside directors who sat on the Board and in that capacity selected members of the [401(K) Savings Plan's] Committee are fiduciaries." Critically, however, the Seventh Circuit limited that duty to the "obligations related to selecting and monitoring members of the Committee." *Id.* at 564; *see also Leigh v. Engle*, 727 F.2d 113, 133–34 (7th Cir. 1984) ("Members of the board of directors exercise discretionary authority or discretionary control respecting management of such plan and are, therefore, fiduciaries with respect to the plan. However, their responsibility, and consequently, their liability, is limited to the selection and retention of fiduciaries[.]"

12

(emphasis omitted)). In her complaint, however, plaintiff does not allege that GreatBanc was unqualified to act as the Trustee or otherwise allege that GreatBanc was not capable of performing its duties under the Engagement Agreement and ERISA. Moreover, plaintiff fails to include any allegations supporting a finding that the individual defendants failed to monitor GreatBanc. Instead, plaintiff simply alleges that the individual defendants breached their fiduciary duties because GreatBanc breached its duties by voting the ESOP shares in favor of the October 2017 Transaction. These allegations, however, are not sufficient to support a breach of fiduciary duty based on a failure to monitor. Instead, as alleged, plaintiff is attempting to hold the individual defendants vicariously liable for GreatBanc's breach. The court agrees with defendants that this claim is at odds with the limited duty to monitor, which is not supported by the allegations in the complaint.

*Fourth*, plaintiff contends that the director defendants retained authority over the administration of the ESOP, even after appointing GreatBanc, because PDQ, as the Administrator of the Plan, retained "discretionary authority or discretionary responsibility in the administration of [the] plan." (Pl.'s Opp'n (dkt. #24) 15 (quoting Ind. Defs.' Mot. to Dismiss, Ex. 2 (dkt. #21-2) ("Plan Document") 56).) However, since the Administrator is PDQ itself, plaintiff fails to explain how the individual directors retained discretionary authority over Plan administration, nor does she direct the court to any authority that the individual defendants could be deemed fiduciaries based on language in the Plan Document identifying the corporate entity PDQ as the Administrator. Regardless, plaintiff

13

concedes that "*GreatBanc* had ultimate discretion as to how to vote the ESOP's shares in regard to the October 2017 Transaction." (Compl. (dkt. #1) ¶ 11 (emphasis added).)[5]

In short, the court agrees with the individual defendants that "the fact that a company's shareholder is an ESOP does not turn ordinary business decisions into ERISA fiduciary acts." (Ind. Defs.' Opening Br. (dkt. #21) 7.) Based on the allegations in the complaint, drawing all reasonable inferences in plaintiff's favor, the court concludes that plaintiff has failed to allege sufficient facts to reasonably infer that the individual defendants violated any fiduciary or other obligation under ERISA with respect to the 2017 Transaction. As such, the court will grant the individual defendants' motion to dismiss.

## II. GreatBanc's Motion to Dismiss

Defendant GreatBanc seeks dismissal solely of those portions of Counts I and III challenging two of the five side payments: (1) Kwik Trip's payment of $1,000,000 to each of the individual defendants in exchange for their promise, through separate agreements entered into with Kwik Trip, not to compete with Kwik Trip's new business for seven years after the transaction; and (2) at some point after the transaction, Kwik Trip's option to purchase property owned by Mike Arnold for $2 million. As described above, plaintiff in

---

[5] Plaintiff also argues in cursory fashion that at least some of its claims against the individual defendants do not require a showing that they personally acted as fiduciaries, citing *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 253 (2000). In *Harris Trust*, the Supreme Court concluded that "an action for restitution against a transferee of tainted plan assets [who is not a fiduciary] satisfies the 'appropriate[ness]' criterion in § 502(a)(3)" and that "[s]uch relief is also 'equitable' in nature." Here, however, plaintiff's claims obviously do not involve the improper transfer of tainted plan assets, and the court declines to extend relief provided under § 502(a)(3), especially since plaintiff did not even allege a violation of this provision of ERISA.

Count I alleges that GreatBanc violated ERISA § 405(a)(1)(D) by causing the ESOP to engage in a prohibited transaction. In Count III, plaintiff alleges that GreatBanc's approval of the side payments as a part of the transaction violated ERISA § 404(a)(1)(A) and (B).

In its motion to dismiss, GreatBanc argues that neither of these side payments involved the ESOP or its assets, and as a result, neither could constitute a prohibited transaction under ERISA. Similarly, GreatBanc argues that approving these payments as part of the Transaction could not breach its fiduciary duties as an outside trustee. More specifically, GreatBanc argues that Kwik Trip's placement of additional value on prohibiting certain PDQ employees, including the three director defendants, from competing against Kwik Trip for a period of time served a purpose *separate* from the underlying sale of PDQ's assets to Kwik Trip. *See Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 836 (E.D. Wis. 2012) (describing non-completes as commonplace because they "serve to preserve the value of what the purchaser has bought"). Moreover, GreatBanc directs the court to at least one district court opinion dismissing a similar claim under § 405(a)(1)(D) because the ESOP was not "a party to the non-compete agreements" and "the payments came from the company, and not the ESOP." *Woznicki v. Raydon Corp.*, No. 618CV2090ORL78GJK, 2019 WL 5702728, at *3 (M.D. Fla. Nov. 4, 2019). With respect to the option to purchase land owned by Arnold, GreatBanc similarly argues that this payment solely concerns a third-party interest in which Arnold had an interest, not the ESOP or PDQ, meaning that Kwik Trip's option to buy this property at some point in the future in no way implicated Plan assets.

In response, plaintiff argues that she has adequately alleged that the non-compete payments and the purchase option were secured through the use of Plan assets; specifically, "neither the non-competes nor the purchase option would have been entered into without the *use* of Plan assets -- in the transaction of which they were a part." (Pl.'s Opp'n (dkt. #24) 20.) Plaintiff also cites to two cases, both of which are distinguishable. In *Hurtado v. Rainbow Disposal Co.*, No. 17 CV 01605, 2018 WL 3372752 (C.D. Cal. July 9, 2018), the district court concluded that two corporate executives' procurement of post-transaction employment agreements fell within the scope of ERISA where the transaction involved the sale of stock held by the plan, not the sale of corporate assets as in the case here. *Id.* at *9-10. Similarly, in *Spires v. Schools*, 271 F. Supp. 3d 795 (D.S.C. 2017), payment for the non-competes were made from "Plan assets," directly "divert[ing] funds from the Plan participants." *Id.* at 807, 810. In either case, plaintiff's argument requires an inference that if Kwik Trip had not agreed to these two side payments, that money would have been contributed to the sale price for the benefit of the ESOP participants. Absent some allegation that PDQ held similar non-competes with the individual defendants or purchase option on Arnold's land, this is not a reasonable inference. As such, the court will grant GreatBanc's motion to dismiss the portions of Counts I and III concerning the non-compete and purchase option payments.

Plaintiff also seeks to hold GreatBanc liable for "breach of fiduciary responsibility of another fiduciary" under ERISA § 405. Since the court is dismissing these claims against the individual defendants, GreatBanc necessarily cannot be held liable on a subordinated basis under § 405. 29 U.S.C. § 1105.

ORDER

IT IS ORDERED that:

1) Defendant GreatBanc Trust Company's motion to dismiss (dkt. #16) is GRANTED.

2) Defendants Mike Arnold, Lea Gerend, Phil Troia and Mike Whaley's motion to dismiss (dkt. #19) is GRANTED.

3) The claims against defendants Arnold, Gerend, Troia and Whaley are DISMISSED. The clerk of court is directed to terminate them as defendants and enter judgment in their favor at the close of the case.

4) Because defendant GreatBanc's motion to dismiss was only a partial motion, and, therefore, claims against it still remain, the clerk's office is directed to set a telephonic scheduling conference with Magistrate Judge Crocker to reset the schedule in this case, including establishing a firm trial date.

Entered this 28th day of June, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge