## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

BRENDA SZALANSKI, on behalf of herself, individually, and on behalf of all others similarly situated,

      Plaintiff,

v.

MIKE ARNOLD, LEA GEREND, PHIL TROIA, MIKE WHALEY and GREATBANC TRUST COMPANY,

      Defendants,

      and

 PDQ FOOD STORES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

      Nominal Defendant.

Case No.: 3:19-cv-00940

**AMENDED CLASS ACTION COMPLAINT**

## INTRODUCTION

1.    Plaintiff Brenda Szalanski brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq*., on behalf of a Class of participants in and beneficiaries of the PDQ Food Stores, Inc. Employee Stock Ownership Plan (the "PDQ ESOP," "ESOP," or "Plan") alleging that certain fiduciaries of the ESOP (a) improperly obtained a personal benefit from a transaction involving the assets of the ESOP that was a prohibited transaction and (b) breached their fiduciary duties under ERISA.

2.    These claims arise out of a transaction by which the assets of PDQ Food Stores, Inc. ("PDQ") were acquired by Kwik Trip, Inc. ("Kwik Trip"), which closed on October 10, 2017 (the "October 2017 Transaction" or "Transaction"). As outlined below, members of the PDQ, Inc. Board of Directors and/or fiduciaries of the PDQ ESOP, Defendants Mike Arnold,

Mike Whaley, Phil Troia, and Lea Gerend, arranged the October 2017 Transaction so that they would receive, in addition to payments to their ESOP accounts, side-payments totaling in excess of $6 million. In addition, Defendants Arnold, Gerend, Troia, and Whaley structured the Transaction to sell Kwik Trip an option to buy property owned individually by Defendant Arnold. Despite their responsibilities as fiduciaries of the ESOP, Defendants Arnold, Gerend, Troia and Whaley structured the Transaction to include these side-payments to themselves and voted as members of the PDQ, Inc. Board of Directors to recommend that participants vote their shares in the ESOP to approve the Transaction including these side-payments. Defendant GreatBanc, the designated Trustee of the ESOP at the time of the October 2017 Transaction, voted the ESOP's shares in favor of the Transaction, including the illegal side-payments to Defendants Arnold, Gerend, Troia, and Whaley. Despite each being aware of their co-fiduciaries' breaches in the Transaction, none of the Defendants took any action to prevent or correct these breaches.

3.      On behalf of a Class of PDQ ESOP participants and beneficiaries, Plaintiff seeks to enforce her rights under ERISA and the Plan to recover the losses incurred by the Plan and/or the improper profits realized by Defendants as a result of their breaches of fiduciary duty and prohibited transactions. Among the relief sought for these breaches and violations, Plaintiff requests that (a) the prohibited transactions be declared void, (b) the breaching fiduciaries be ordered to restore to the Plan all payments that they derived from their prohibited transactions and breaches of fiduciary duties, to disgorge any profits on the proceeds of those payments, to provide an accounting, and to have a surcharge and any other appropriate equitable relief imposed against them, and (c) any monies recovered for the Plan be allocated to the accounts of the Class.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

5.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District, and one or more of the Defendants may be found in this District.

## PARTIES

### Plaintiff

6.      Plaintiff Brenda Szalanski was employed at PDQ Food Stores from October 2000 until October 2017. She began participating in the PDQ ESOP in April 2009. Ms. Szalanski remains a participant of the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because she has still not received complete distribution of her benefits from the Transaction and because she has a colorable claim for additional benefits as a result of Defendants' breaches and violations. She resides in Okauchee, Wisconsin.

### Defendants

7.      Defendant Mike Arnold was, at the time of the October 2017 Transaction, the President of PDQ and a member of the PDQ Board of Directors ("Board"). As a result of his position as a member of the Board, an officer, and an employee, Arnold was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

8.      Defendant Lea Gerend was, at the time of the October 2017 Transaction, an officer and employee of PDQ. Accordingly, Gerend was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

9.    Defendant Phil Troia was, at the time of the October 2017 Transaction, a Vice President of PDQ and a member of the Board. Accordingly, Troia was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

10.    Defendant Mike Whaley was, at the time of the October 2017 Transaction, the Vice President of Marketing and Merchandising at PDQ. Whaley was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

11.    Defendant GreatBanc Trust Company ("GreatBanc") was the named Trustee for the October 2017 Transaction and a named fiduciary of the PDQ ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. Section 1.4 of the Plan Document defines the "Trustee" as the "entity holding the assets of the Plan in trust." Article 3 of the Trust Agreement and Section 3 of the Engagement Agreement provided GreatBanc with the authority to hold and manage all assets of the Trust, including the authority "to exercise all such rights and privileges as [GreatBanc] deems necessary or advisable to administer the Trust Fund or to carry out the purposes of this [Trust] Agreement." As explained by the "Confidential Information Statement" ("Information Statement") dated September 1, 2017, and signed by Defendant Arnold, which PDQ, Inc. provided to participants in the ESOP, GreatBanc would "vote the shares allocated to your ESOP account with respect to the [October 2017 Transaction] in accordance with [participant] instructions *unless [GreatBanc] determines that following your voting instructions would violate its fiduciary duties under ERISA*" (emphasis added). As GreatBanc had ultimate discretion as to how to vote the ESOP's shares in regard to the October 2017 Transaction, GreatBanc remained authorized and responsible to (a) make a determination as to whether voting in favor of the Transaction would violate ERISA, and (b) vote against the October 2017 Transaction if it determined that the Transaction would violate ERISA. According to the Information Statement, GreatBanc also retained the authority to vote all shares for which it did not receive voting instructions.  Because GreatBanc had actual authority and control over the assets of the ESOP,

4

was the named Trustee of the ESOP as of at least March 13, 2017, and exercised discretionary authority and control over the assets of the ESOP by determining to vote the shares of the ESOP in favor of the Transaction, GreatBanc was a fiduciary with respect to the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

**Nominal Defendant**

12.     The PDQ Food Stores, Inc. Employee Stock Ownership Plan (the "PDQ ESOP") is an "employee pension benefit plan" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), and an employee stock ownership plan under ERISA § 407(d)(6), that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument by which the ESOP is maintained within the meaning of ERISA § 402, 29 U.S.C. § 1102, is the "PDQ Food Stores, Inc. Employee Stock Ownership Plan, Restated Effective January 1, 2016" (the "Plan Document"). The PDQ ESOP is named as a nominal defendant pursuant to Federal Rule of Civil Procedure 19 to ensure that complete relief can be granted as to claims brought on behalf of the Class.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following Class:

> Participants in the PDQ ESOP who had vested under the Plan as of October 10, 2017 and those participants' beneficiaries.

> Excluded from the Class are Defendants and their immediate family, any fiduciary of the Plan and the members of his or her immediate family, the officers and directors of PDQ and the members of their immediate families and legal representatives, successors, and assigns of any such excluded persons.

**Numerosity**

14. The members of the Class are so numerous that joinder of all members is impracticable. According to the 2017 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, as of January 1, 2017, there were 309 participants, and as of December 31, 2017, there were 313 participants with account balances within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.

15. The Information Statement states that PDQ, Inc. "own[ed] and operate[d] 35 convenience stores in Wisconsin, and one convenience store in California," that PDQ's stores in Wisconsin are "located in the Madison area, Milwaukee area, Menasha and North Fond du Lac," and the California store was in Tahoma, California. As PDQ employees and participants are likely located in each of those locations, the members of the Class are geographically dispersed.

**Commonality**

16. The issues of liability are common to all members of the Class and are capable of common answers, as those issues primarily focus on Defendants' acts or failure to act. Questions of law and fact common to the Class as a whole include the following:

a. Whether in voting the shares of the ESOP in favor of the October 2017 Transaction GreatBanc caused the PDQ ESOP to engage in a transaction that constituted a direct or indirect sale, exchange, or leasing of any property between the plan and a party in interest or that constituted a transfer to or use by or for the benefit of a party in interest of any assets of the ESOP.

b. Whether Defendants Arnold, Gerend, Troia and Whaley knowingly participated in the October 2017 Transaction and thus in a transaction prohibited by ERISA.

c. Whether GreatBanc, in discharging its responsibilities as a fiduciary in the October 2017 Transaction, acted for the exclusive purpose of providing benefits to participants and the beneficiaries of the Plan and with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

e.      The appropriate remedies as a result of Defendants' fiduciary breaches and prohibited transactions.

**Typicality**

17.      Plaintiff's claims are typical of those of the Class because their claims arise from the same event, practice, and/or course of conduct. Specifically, Plaintiff's claims, on behalf of the Class, allege that Defendants engaged in prohibited transactions or breaches of fiduciary duty in connection with the October 2017 Transaction that affected the Plan and all of the participants in the Plan. Plaintiff's claims are also typical of the claims of the Class, because they generally seek recovery and relief on behalf of the Plan.

**Adequacy**

18.      Plaintiff will fairly and adequately represent and protect the interests of the Class.

19.      Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

20.      Defendants do not have any unique defenses that would interfere with Plaintiff's representation of the Class.

21.      Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation and with particular experience and expertise in ESOP litigation.

**Fed. R. Civ. P. 23(b)(1)(A)**

22.      Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and their participants.

This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

**Fed. R. Civ. P. 23(b)(1)(B)**

23.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the Plan and engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Fed. R. Civ. P. 23(b)(2)**

24.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or engaged in prohibited transactions and thereby violated ERISA as to the ESOP as a whole.  The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or as a necessary consequence of that relief.

**Fed. R. Civ. P. 23(b)(3)**

25.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. Common questions related to liability will necessarily predominate over any individual questions precisely

because Defendants' duties and obligations were uniform to all participants and therefore to all members of the Class. Plaintiff and all Class members have been harmed by Defendants' prohibited transactions and fiduciary breaches in the October 2017 Transaction. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

26.    A class action is a superior method to other, available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings, each of which could seek recovery for the entire Plan. The amounts recoverable by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

27.    The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a.    The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b.    No other litigation concerning this controversy has been filed by any other member(s) of the Class.

c.    This District is the most desirable location for concentrating the litigation for reasons that include, without limitation: (i) the PDQ ESOP was administered in this District; (ii) a significant number, if not the majority, of the Class are located in this District; (iii) the individual Defendants can be found in this District; and (iv) a number of

9

witnesses, including certain non-party witnesses, are expected to be located in this District.

d.      There are no anticipated difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

28.      Prior to October 2017, PDQ Food Stores, Inc. operated a chain of convenience stores located in Wisconsin, primarily in the vicinity of Milwaukee and Madison. PDQ also had one store near Tahoma, California. As of January 2016, PDQ owned and operated 35 convenience stores, most of which sold gasoline in addition to grocery products.

29.      According to the Information Statement dated September 1, 2017 and signed by Defendant Arnold, PDQ was founded in 1949 by Sam Jacobson. The company remained wholly owned by Jacobson and/or by his son, Jeff Jacobson, until Jeff Jacobson sold the company to the PDQ ESOP in 2009, at which point the company became 100% owned by its employees. The ESOP owned 100% of PDQ from May 2009 to October 2017.

**The Relevant Terms of the PDQ ESOP Plan Document**

30.      According to the January 1, 2016 Plan Document, PDQ adopted the PDQ ESOP effective January 1, 2009, "to provide retirement benefits for eligible employees."

*Employee Participation*

31.      Pursuant to Article 2 of the Plan Document, all PDQ employees (except for those who were covered by a collective bargaining agreement that did not require participation in the ESOP) who performed at least 1,000 hours of work for PDQ per year were eligible to participate in the ESOP. Employees participated in the Plan through individual accounts that included their holdings in the ESOP.

32.      Article 2 of the Plan Document provided that employees who were employed as of January 1, 2009, were automatically enrolled as of that date. Employees who were hired later

10

were automatically enrolled at the end of the first fiscal quarter after they completed their first year of qualifying service. The Plan permitted terminated employees to continue to participate in the Plan, but employees could not receive employer contributions to their ESOP accounts after their termination.

33.     According to Article 6 of the Plan Document, all participants who terminated employment with PDQ after age 65, or due to death or disability, were fully vested in their ESOP accounts.  Participants who terminated for any other reasons became vested in their ESOP accounts according to the following schedule:

| Years of Service | Percentage |
| --- | --- |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

34.     According to the notes accompanying the ESOP's audited financial statements accompanying the Form 5500 submitted to the DOL for the 2017 Plan Year, all participants in the Plan as of October 9, 2017, are 100% vested in their accounts.

**ESOP Funding**

35.     Pursuant to Article 3 of the Plan Document, the ESOP was funded through annual contributions by PDQ, Inc. of PDQ stock or cash. At least once per year, the Board of Directors, acting on behalf of PDQ as the Administrator, allocated the PDQ, Inc. contribution among accounts corresponding to each participant in the Plan. The amount of the contribution was proportional to the participant's total compensation (computed as their income from PDQ reported on their annual W-2 plus any deferred compensation) relative to the total compensation paid by PDQ to all participating employees. For the Plan Year ending December 31, 2017, the ESOP reported to the U.S Department of Labor ("DOL") holding over $48 million in employer securities and "interest-bearing cash."

11

36.     A resolution of the PDQ Board of Directors terminated the ESOP effective January 31, 2018.

**The Fiduciaries of the ESOP**

*The Board of Directors*

37.     Pursuant to Section 1.4 of the Plan Document, PDQ, Inc. is designated as the Administrator of the Plan. Section 1.9 of the Plan Document authorizes the Board of Directors of PDQ to "act on behalf of the Company for purposes of the Plan." Section 8.2 of the Plan Document provides the Board "full and complete authority and control with respect to Plan operations and administration unless the [Board] allocates and delegates such authority or control pursuant to the procedures stated in subparagraph (b) or (c) below." Section 9.1 of the Plan Document empowers the Board to "appoint one or more Trustees to receive and hold in trust all contributions, and Income, paid into the Trust Fund," and to "remove the Trustee" and appoint its successor "pursuant to the requirements and procedure recited in the Trust Agreement." Article 9 of the Trust Agreement and Section 2 of the Successor Trustee Engagement Agreement between PDQ, Inc. and GreatBanc authorized PDQ, acting through the Board, to appoint and remove the Trustee.

*The Trustee*

38.     By resolution dated September 1, 2009, the PDQ Board of Directors appointed Defendants Arnold, Troia, and non-party Jerry Archer as Trustees of the ESOP. The resolution was signed by Arnold, Troia, non-party Archer, and Jeffrey Jacobsen, the CEO of PDQ, Inc.

39.     PDQ, Inc. entered into an agreement with GreatBanc Trust Company ("GreatBanc"), effective March 13, 2017 (the "Engagement Agreement"), pursuant to which GreatBanc replaced Defendants Arnold, Whaley, and Troia as Trustee of the ESOP. The Engagement Agreement was signed by Defendant Arnold in his capacity as a member of the PDQ, Inc. Board of Directors and as President of the Company. Upon information and belief, the

PDQ Board of Directors approved the Engagement Agreement pursuant to its authority, under Section 9.1 of the Plan Document, to "appoint one or more Trustees to receive and hold in trust all contributions, and Income, paid into the Trust Fund." By the terms of the Engagement Agreement, GreatBanc was required to "hold and manage all assets of the Trust in accordance with the terms of the Trust Agreement."

**The October 2017 Transaction**

40.     The terms of the October 2017 Transaction are described in the Information Statement dated September 1, 2017, and signed by Defendant Arnold.

41.     According to the Information Statement, Kwik Trip Stores, Inc. ("Kwik Trip") acquired 100% of the assets of PDQ, Inc. in the Transaction. The Transaction was carried out "pursuant to an asset purchase agreement . . . by and between the Buyer [Kwik Trip], the Seller [PDQ, Inc.], the ESOP Trustee [GreatBanc], and Mike Arnold, Mike Whaley, Phil Troia, and Lea Gerend." The Information Statement stated that the PDQ ESOP "owns all of the issued and outstanding capital stock of" PDQ, Inc.

42.     Kwik Trip Stores, Inc. signed an agreement on July 19, 2017 ("Asset Purchase Agreement") to acquire the assets of PDQ, Inc. Food Stores in the October 2017 Transaction. The Transaction closed on October 10, 2017. The Asset Purchase Agreement was signed by Defendant Arnold on behalf of PDQ, Inc., the PDQ ESOP, Defendants Arnold, Whaley, Troia, and Gerend in their individual capacities, and by Kwik Trip, Inc. GreatBanc signed the Agreement as Trustee of the PDQ ESOP.

43.     According to the Information Statement, 100% of the proceeds of the purchase of PDQ, Inc.'s assets by Kwik Trip, Inc., minus funds reserved for certain other liabilities, would be distributed to the shareholders of PDQ, Inc. (the "Net Purchase Amount"). At the time of the October 2017 Transaction, the PDQ ESOP owned 100% of the outstanding shares of PDQ.

Every deduction from the Net Purchase Amount reduced the amounts available to be paid to participants in the Plan.

44.     According to the Information Statement, Defendants Arnold, Gerend, Troia, and Whaley were responsible for negotiating the terms of the Asset Purchase Agreement on behalf of PDQ, Inc. and the ESOP. Specifically, the Information Statement stated, "[t]he Board did not retain a third-party for assistance with negotiations with [Kwik Trip, Inc.] . . . . Instead, the Key Employees [Defendants Arnold, Gerent, Troia, and Whaley] performed all of the work to negotiate [Kwik Trip, Inc.'s] offer to acquire the Company, including the terms and conditions of the purchase agreement, and to compile all information requested by the Buyer and the ESOP Trustee to allow each party to conduct due diligence."

45.     At the same time that Defendants Arnold, Troia, Gerend, and Whaley negotiated the terms of the Transaction on behalf of the ESOP, these Defendants structured the transaction to include over $12 million in side-payments to themselves. The Information Statement admitted that Defendants Arnold, Gerend, Troia, and Whaley "will benefit financially from the sale" and that "[p]otential conflicts of interest as a result of certain interests of Key Employees [Defendants Arnold, Gerend, Troia, and Whaley] may have influenced the decision of the Board to recommend approval of the Transactions." According to the Information Statement, equipped with knowledge that the October 2017 Transaction included millions of dollars in side-payments to Defendants Arnold, Whaley, Troia, and Gerend, Defendants Arnold, Troia, and Whaley voted as members of the PDQ, Inc. Board of Directors to recommend that ESOP participants vote their shares of the ESOP in favor of the Transaction, including these side-payments. As a result of the Board's vote, PDQ, Inc. distributed the Information Statement to participants in the ESOP containing the Board's recommendation that ESOP participants vote their shares in the ESOP in favor of the Transaction. According to the Information Statement, the PDQ, Inc. Board of Directors voted to approve the Transaction, including the over $12 million in side-payments to

14

Defendants Arnold, Gerend, Troia, and Whaley, whom the Information Statement referred to as "interested directors."

46.    According to the Information Statement, Defendants Arnold, Gerend, Troia, and Whaley structured the October 2017 Transaction so that in addition to the transfer of 100% of PDQ's assets to Kwik Trip Stores, Inc., the October 2017 Transaction included the following terms:

      a.   PDQ, Inc. and the ESOP paid Defendants Arnold, Gerend, Troia, and Whaley, a total of up to $1.85 million, purportedly to "incentivize" them "to satisfy various closing contingencies."

      b.   PDQ, Inc. paid each of Defendants Arnold, Gerend, Troia, and Whaley, "severance pay" in the amount of two times their annual salary, in the form of a lump sum payment.

47.    In addition to these payments, Defendants Arnold, Gerend, Troia, and Whaley personally received distributions totaling $4.96 million (the "SAR Payout") from the PDQ Inc. Stock Appreciation Rights Plan ("SAR Plan"). According to a "DRAFT" financial analysis of the Transaction performed by Prairie Capital Advisors, Inc. addressed to GreatBanc, attached to the Information Statement, the SAR Payout was deducted from and reduced the total amount of funds available to the ESOP in the Transaction. According to a financial analysis of the Transaction performed by Enterprise Services, Inc. addressed to the PDQ, Inc., Board of Directors, and based on the terms of the PDQ, Inc. Stock Appreciation Rights Plan Document ("SAR Plan Document"), PDQ, Inc. paid the SAR Payout.

48.    According to the Information Statement, Defendants Arnold, Whaley, and Troia: (1) along with Defendant Gerend, negotiated the terms of the Transaction to include over $6 million in side-payments to themselves; and (2) voted to recommend that participants in the ESOP vote their shares in the ESOP in favor of the Transaction, while simultaneously serving as

fiduciaries of the PDQ ESOP. The Plan Document of the SAR Plan provides that participants in the SAR Plan are granted Stock Appreciation Rights "pursuant to a Grant Agreement between each Participant and PDQ incorporating the terms of this Plan[.]" Additionally, the SAR Plan Document provides that "[v]esting of Stock Appreciation Rights shall be determined in accordance with the terms of each Participant's respective Grant Agreement."

49.    The Enterprise Services Inc. "Fairness Opinion" asserts that "[w]ith a change of control all units [in the SAR Plan] become fully vested and exercisable and thus represent a liability of PDQ" and that as a result, the SAR liability of PDQ was "approximately $5 million." However, no provision of the SAR Plan Document actually provides that all units in the SAR Plan become fully vested upon a change of control. Rather, Section 6 of the SAR Plan Document provides that a SAR Plan "Participant shall be deemed to exercise all of his vested Stock Appreciation Rights on the Applicable Maturity Date," including a change of control. In other words, a change of control requires payment of any vested Stock Appreciation Rights, but does not vest otherwise unvested rights.

50.    As the Grant Agreements with Defendants Arnold, Gerend, Troia, and Whaley (or other SAR Plan participants) were not provided or described as part of the disclosures to PDQ ESOP participants about the Transaction, Defendants failed to disclose whether some of the $4.96 million SAR Payout included amounts related to SAR Plan interests that had not yet vested or which could have been terminated or otherwise not paid in connection with the Transaction. By delaying the vesting date of the Stock Appreciation Rights, terminating the SAR Plan in advance of the Transaction, or voting as members of the Board of Directors to recommend that ESOP participants vote their shares in the ESOP against the Transaction, Defendants Arnold, Troia, and Whaley could have reduced the amount of the SAR Payout, and therefore benefitted the ESOP and its participants by increasing the amount of funds available to the ESOP. Accordingly, Defendants Arnold, Troia, and Whaley suffered from a conflict of interest created

by simultaneously holding positions as: (1) fiduciaries of the ESOP, which would benefit from cancellation or reduction of the SAR Payout; (2) members of the PDQ Board of Directors, which was responsible for negotiating the terms of the Transaction and making recommendations to ESOP participants as to whether to vote for or against the Transaction, as well as having the authority to cancel or reduce the SAR Payout; and/or (3) the PDQ, Inc. executives who received the SAR Payout.

51.     The Information Statement defines the "Net Purchase Amount" as "the amount remaining [from the proceeds of the October 2017 Transaction] after the above described payments." According to the Information Statement, the SAR Payout, the $1.85 million in "incentive" payments, and the severance payments to Defendants Arnold, Gerend, Troia, and Whaley reduced the Net Purchase Amount that otherwise would have been paid to ESOP participants. The $1.85 million in "incentive" payments made to Defendants Arnold, Gerend, Troia, and Whaley were withdrawn from a "COBRA Holdback Amount" and an "Indemnity Holdback Amount" that, pursuant to the terms of the Asset Purchase Agreement as described by the Information Statement, otherwise would have been included in the Net Purchase Amount paid to the ESOP. Each of these payments was in addition to and in excess of any distributions that Defendants Arnold, Gerend, Troia, and Whaley received as participants in the ESOP based on the value of their respective ESOP accounts.

52.      The total amount of payments received by Defendants Arnold, Gerend, Troia, and Whaley in connection with the October 2017 Transaction exceeded $6 million, as follows:

(b)     Each of these Defendants received an undisclosed portion of the $4.96 million SAR Payout;

(c)     Each of these Defendants received an undisclosed amount equal to two times their annual salary;

(d)     Each of these Defendants received an undisclosed portion of the $1.85 million

17

deduction from the "COBRA Holdback Amount" and "Indemnity Holdback Amount;" and

53.     As members of the PDQ, Inc. Board of Directors, Defendants Arnold, Troia, and Whaley voted to recommend that all participants in the PDQ ESOP vote their shares of PDQ, Inc. stock in favor of the Transaction, including these side-payments. As Trustee of the PDQ ESOP, GreatBanc voted the shares of the ESOP in favor of the Transaction. As explained by the Information Statement provided by PDQ, Inc. to participants in the ESOP, GreatBanc would "vote the shares allocated to your ESOP account with respect to the [October 2017 Transaction] in accordance with your instructions *unless [GreatBanc] determines that following your voting instructions would violate its fiduciary duties under ERISA*" (emphasis supplied). By virtue of this authority, GreatBanc remained authorized and had a fiduciary duty to (1) make a determination as to whether voting in favor of the Transaction would violate ERISA and (2) vote against the October 2017 Transaction if it determined that the Transaction would violate ERISA. According to the Information Statement, GreatBanc also retained the authority to vote all shares for which it did not receive voting instructions.

## COUNT I
### Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a), 29 U.S.C. §§ 1106(a), Against Defendant GreatBanc

54.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

55.     ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits a fiduciary from "causing the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]"

56.     ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(1), requires that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

57.     As of the date of its appointment, GreatBanc was a fiduciary of the ESOP, because it had actual control over the Plan's assets, including the authority and discretion: (a) to manage, acquire, dispose of and control the assets and investments of the ESOP, (b) to vote shares of common stock held by the ESOP, and (c) to evaluate and contract or enter into transactions between itself and another entity or individual for the purpose of acquiring or selling stock of PDQ, Inc.

58.     ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to an "employee benefit plan" as including "(H) an employee, officer, [or] director" of "(C) an employer any of whose employees are covered by such plan." Defendants Arnold, Gerend, Troia, and Whaley were "parties in interest" to the ESOP because they were employees, officers, and directors of PDQ, Inc., whose employees were covered by the PDQ, Inc. ESOP.

59.     Defendant GreatBanc caused the ESOP to engage in the October 2017 Transaction because: it voted the shares of the ESOP in favor of the Transaction and thus caused the ESOP to engage in a prohibited transaction.

60.     The October 2017 Transaction constituted a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" because: (a) while serving as members of the Board of Directors and as fiduciaries of the ESOP, Defendants Arnold, Troia, and Whaley voted to recommend that participants in the ESOP vote their shares in the ESOP in favor of the Transaction, (b) the Transaction required a vote of the shares of PDQ, Inc., which were Plan assets, and (c) as a result of the Transaction, Defendants Arnold, Gerend, Troia, and Whaley

received payments that reduced the amount of funds available to the ESOP as a result of the Transaction.

### COUNT II
**Knowing Participation in a Prohibited Transaction Forbidden by ERISA §§ 406(a), 29 U.S.C. §§ 1106(a), and for Appropriate Equitable Relief Under ERISA § 502(a)(3), 29 U.S.C. §§ 1132(a)(3) Against Defendants Arnold, Gerend, Troia, and Whaley**

61.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

62.     Defendants Arnold, Gerend, Troia, and Whaley participated in the October 2017 Transaction because (a) they carried out the responsibilities of the Plan Administrator in connection with the transaction and, as members of the Board of Directors, Defendants Arnold, Whaley, and Troia were given "full and complete authority and control with respect to Plan operations and administration" by Section 8.2 of the Plan Document, including appointing GreatBanc as Trustee; (b) Defendants Arnold, Troia, and Whaley voted to recommend that ESOP participants vote their shares in the ESOP in favor of the October 2017 Transaction; (c) with respect to the Transaction, Defendants Arnold, Gerend, Troia, and Whaley negotiated and committed to sell to Kwik Trip the assets of PDQ, Inc., whose stock comprised an asset of the ESOP and had to be voted in order to accomplish the Transaction; (d) they negotiated the terms of the Transaction to include over $6 million in total side-payments to benefit themselves, which directly reduced the "Net Purchase Amount" available to the PDQ, Inc. ESOP participants; and (e) were themselves parties to the October 2017 through their receipt of those side-payments.

63.     Defendants Arnold, Troia, and Whaley had knowledge of all relevant terms of the October 2017 Transaction by virtue of (a) their carrying out the responsibilities of the Plan Administrator in connection with the Transaction , (b) their roles as members of the Board, and (c) because they negotiated the terms of the October 2017 Transaction. Defendant Gerend had

knowledge of all relevant terms of the October 2017 Transaction by virtue of his negotiation of the terms of the October 2017 Transaction.

64.     Defendants Arnold, Gerend, Troia, and Whaley can be held liable for knowing participation in GreatBanc's violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). As parties to the Transaction and officers of PDQ, Inc., Defendants Arnold, Gerend, Troia, and Whaley knew all of the facts sufficient to know that the October 2017 Transaction constituted a direct or indirect transaction between the ESOP and parties-in-interest. As members of PDQ's Board of Directors, Defendants Arnold, Troia, and Whaley were responsible for recommending to the ESOP shareholders whether to vote their shares in favor of the Transaction and for negotiating the terms of the October 2017 Transaction. As such, Defendants Arnold, Gerend, Troia, and Whaley are liable for knowing participation in the Transaction, and appropriate equitable relief can and should be awarded against them.

## <u>COUNT III</u>
### Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), Against Defendant Greatbanc

65.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

66.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, "(A) for the exclusive purpose of providing benefits to the participants in and beneficiaries" of the plan, and "(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

67.     Defendant GreatBanc violated its fiduciary responsibilities under ERISA § 404(a), 29 U.S.C. § 1104(a), by voting the shares of the PDQ, Inc. ESOP in favor of the October 2017 Transaction. As of the date of its appointment, GreatBanc was a fiduciary of the

ESOP, because it had actual control over the Plan's assets, including the authority and discretion: (a) to manage, acquire, dispose of and control the assets and investments of the ESOP, (b) to vote shares of common stock held by the ESOP, and (c) to evaluate and contract or enter into transactions between itself and another entity or individual for the purpose of acquiring or selling stock of PDQ, Inc. As explained by the Information Statement, GreatBanc retained the authority to vote against the October 2017 Transaction if it "determine[d] that following [participants'] voting instructions would violate its fiduciary duties under ERISA." According to the Information Statement, GreatBanc also retained authority to vote against the Transaction those shares of the ESOP for which it did not receive voting instructions from participants. As the Trustee, GreatBanc received or had available to it complete information about the terms of the October 2017 Transaction, including the side-payments to Defendants Arnold, Whaley, Troia, and Gerend. Nevertheless, GreatBanc proceeded to vote the shares of the PDQ ESOP in favor of the Transaction, including over $6 million in total side-payments to interested directors of PDQ, Inc, from the proceeds of the sale of the assets of PDQ Inc., whose stock was the only non-cash asset of the Plan, in violation of its duties pursuant to ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

## ENTITLEMENT TO RELIEF

68.     By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled to sue each of the Defendants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for all improper benefits that Defendants derived from their prohibited transactions and breaches of fiduciary duties, the recovery of any profits resulting from the breaches of fiduciary duty and prohibited transactions, and such other equitable or remedial relief as the Court may deem appropriate.

69.     By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue each of the Defendants for any appropriate equitable relief to redress the wrongs described above.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the Class, prays that judgment be entered against Defendants on all claims, and requests that the Court order or award the following relief:

A.     Declare any transaction that constitutes a prohibited transaction void and (1) require Defendants Arnold, Gerend, Troia, and Whaley (or any other fiduciary or party-in-interest engaging in these transactions) to disgorge any profits made as a result of such transaction; (2) declare a constructive trust over the proceeds of any such transaction; and/or (3) order any other appropriate equitable relief, whatever is in the best interest of the Plan.

B.     Require each fiduciary found to have breached his/her/its fiduciary duties to the Plan: (1) to jointly and severally make good to the Plan any losses to the Plan resulting from each breach of its fiduciary duties to the Plan, and (2) to restore to the Plan any profits o which have been made through use of assets of the plan .

C.      Order such other equitable or remedial relief as the court may deem appropriate to remedy any breaches of fiduciary duty or by virtue of any liability imposed pursuant to ERISA § 405, 29 U.S.C. § 1105.

D.      Require that the proceeds of any recovery for the ESOP be allocated to the accounts of participants in the Plan, other than the Defendants and other individuals excluded from the Class.

E.      Order the removal of Defendants from their positions as fiduciaries of the PDQ, Inc., ESOP (to the extent necessary) and enjoin them from acting as fiduciaries for any employee benefit plan that covers or includes any PDQ, Inc., employees or any members of the Class.

F.      Appoint an Independent Fiduciary to manage the PDQ ESOP, to be paid for by Defendants.

G.      Order, pursuant to ERISA § 206(d)(4), that any amount to be paid to the ESOP accounts of the Class members can be satisfied by using or transferring any breaching fiduciary's ESOP account (or the proceeds of that account) to the extent of that fiduciary's liability.

H.      Require Defendants to pay attorneys' fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), or order the payment of reasonable fees and expenses to Plaintiffs' counsel on the basis of the common benefit or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class in this action.

I.      Award pre-judgment and post-judgment interest.

J.      Award such other relief as the Court determines Plaintiffs and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or otherwise**.**

Dated: December 30, 2022

Respectfully submitted,

R. Joseph Barton
Email: jbarton@bartondownes.com
Colin M. Downes
Email: colin@bartondownes.com
BARTON & DOWNES LLP
1633 Connecticut Ave, N.W., Ste. 200
Washington, DC 20009
Tel: (202) 734-7046

Andrew W. Erlandson
Email: aerlandson@hurleyburish.com
Catherine E. White
Email: cwhite@hurleyburish.com
HURLEY BURISH, S.C.
33 East Main Street, Suite 400
Madison, WI 53703
Tel: (608) 257-0945
Fax: (608) 257-5764

*Attorneys for Plaintiff*